132   333
138   ₁215

SCULLY *v.* DETROIT IRON FURNACE CO.

1. CONTRACT OF SALE—PROPOSAL—ACCEPTANCE.
   Plaintiff offered to buy 5,000 cords of wood of defendant. In reply defendant wrote that it would "proceed to get out wood" for plaintiff, providing certain changes in terms, which it proposed, were made, and that the balance of the terms were entirely satisfactory. By subsequent correspondence the proposed changes, which did not relate to the amount, were accepted. *Held,* that defendant, by writing, "The balance of the terms are satisfactory," contracted to deliver 5,000 cords of wood.

2. SAME—BREACH—OFFER OF COMPROMISE.
   An offer by plaintiff to accept less than the amount of wood contracted for upon certain conditions, which were not fulfilled, did not relieve defendant from liability for not delivering all the wood contracted.

Error to Wayne; Donovan, J. Submitted January 13, 1903. (Docket No. 30.) Decided March 5, 1903.

*Assumpsit* by Walter J. Scully against the Detroit Iron Furnace Company for the breach of a contract for the sale of wood. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Reversed.

*Alex. J. Groesbeck,* for appellant.

*Wells, Angell, Boynton & McMillan,* for appellee.

CARPENTER, J. By correspondence, the parties to this suit made a contract, whereby the plaintiff agreed to buy wood from the defendant. Only 641¾ cords of wood, which was all that defendant could procure, was delivered to plaintiff. Plaintiff, being compelled to pay for other wood more than the contract price, brought this suit to recover damages, claiming that the defendant had agreed to sell 5,000 cords. The trial judge decided, as contended

by defendant, that it had made no such agreement, and directed a verdict in its favor.   To determine the correctness of this decision, we must examine the correspondence which constitutes the contract.

On the 6th of December, 1898, plaintiff wrote defendant as follows:

"Referring to my telephonic communication with your Mr. Black today, and my interview with Mr. Calkins here in the office, Mr. Calkins made me a price of $1.60 a cord, 128 cubic feet, for hardwood beech and maple, at least 75 per cent. hard maple,   *   *   *   to be   *   *   *   piled alongside the track at Gaylord, subject to my orders. *   *   *   Under this arrangement, you can proceed to get the wood out,   *   *   *   to the amount of 5,000 cords, you to guarantee the delivery to me of such wood as is measured, inspected, and paid for, and requested for shipment on my order.   Kindly advise me as soon as possible when you commence operations."

In response to this letter, defendant wrote:

"In the main, the terms of your letter are correct; but we cannot guarantee that at least 75 per cent. of the wood will be hard maple.   As Mr. Calkins stated to you, in his judgment it would run about that.   We will proceed, without further delay, to get out wood for your account, providing this point regarding the hard maple is mutually understood.   We will guarantee delivery to you of all such wood as you have measured, inspected, and paid for at Gaylord, when requested for shipment, with the exception that we will not be responsible for loss by fire. *   *   *   The balance of the terms of your letter are entirely satisfactory."

To this plaintiff replied on the 7th of December:

"If you will have the wood run as near 75 per cent. hard maple as possible, it will be satisfactory.   In regard to piling the wood, I hope you will have the same piled in a nice high and dry place.   *   *   *   As the matter stands now, I will have to run the risk on the fire question."

Defendant answered the foregoing on the 8th of December, as follows:

"In getting out wood for you at Gaylord, we will

endeavor to have it as near 75 per cent. hard maple as possible. Our Mr. Calkins has returned to Gaylord, and I have directed him to get out the wood for your account as soon as possible. I have also instructed him as to the piling of it, etc., in accordance with the terms of your letter."

We think the trial judge erred in deciding that the correspondence did not obligate the defendant to deliver 5,000 cords of wood. It is true that the defendant, in accepting the plaintiff's proposition, did not expressly promise to furnish any particular quantity. It is also true that defendant stated in its letter of December 7th that, if an arrangement was concluded, it would "proceed to get out wood for your account." But we must treat the concluding sentence of the letter, "The balance of the terms of your letter are entirely satisfactory," as an assent to the proposition contained in plaintiff's letter of December 6th, "to get the wood out to the amount of 5,000 cords." By the contract proved by the correspondence, we must, therefore, hold that plaintiff offered to buy and defendant agreed to sell 5,000 cords of wood.

The case of *Toomey* v. *Atyoe*, 95 Tenn. 373 (32 S. W. 254), relied upon by the defendant, is not in point. There the contract obligated Atyoe Bros. & Co., mill owners, "to saw such logs into lumber as are by the party of the first part [Toomey] furnished on the sawmill grounds, to the amount of 1,000,000 feet." It was said:

"Atyoe Bros. & Co. obligated themselves in that agreement to saw such logs into lumber as Toomey might furnish, 'to the amount of 1,000,000 feet,' if he should deliver so much; but he did not contract that he would in fact furnish enough logs to make that amount of lumber."

In the case at bar, as already stated, defendant, by accepting plaintiff's proposition, agreed to "proceed to get the wood out to the amount of 5,000 cords."

On the 7th of March, 1899, in answer to a letter from defendant informing him that nothing like the quantity of wood looked for could be obtained, plaintiff wrote:

"I am somewhat disappointed at the nondelivery of the wood, but if he [defendant's agent] is able, in the early spring, to give me a large quantity of wood ready for fall shipments, this will answer very nicely."

Defendant claims that this language "shows clearly enough that, to his mind, there was no agreement in the letters such as is now claimed." If it were true that this did clearly indicate plaintiff's mind that no such agreement was contained in the letters, it would not destroy said agreement, if it was, as we think, actually made. This language does not, however, clearly indicate that, in plaintiff's mind, there was no such agreement. It is open to the construction that he will, under certain conditions, accept less than his contract rights. Inasmuch as defendant did not comply with these conditions, that letter seems to us to be entirely without significance.

Defendant insists that, while it is obvious from the letters themselves that it did not obligate itself to deliver 5,000 cords of wood, this intent "is made more clear when we consider that, at the time of the correspondence, both parties knew that the quantity of wood which could be had was wholly uncertain." It is not contended that we can consider what only one of the parties knew for the purpose of determining the meaning of correspondence which we do not find to be ambiguous. Without, by any means, deciding that we have a right to consider what both parties knew, it is sufficient to say that such consideration would not affect our conclusion; for, according to plaintiff's testimony, while he knew that the amount of wood which defendant could get out was uncertain, he had reason to believe that that amount would be, and that defendant could safely agree that it should be, 5,000 cords.

Judgment will be reversed, and a new trial granted.

The other Justices concurred.