CHURCH v. ANTI-KALSOMINE CO.

1. PATENTS—TRANSFER—CONTRACTS—CONSTRUCTION.

On a bill to compel the reassignment of certain patents for
wall finish, the contract of assignment examined, and *held* to
render defendant the absolute owner of the patents, and not
to constitute a mere license for their use for five years, as
alleged in the bill.

2. SAME—CORPORATIONS—DIRECTORS—RESOLUTION—EFFECT.

The contract being plain and unambiguous, defendant's rights
thereunder were not affected by a resolution passed by its
directors at the expiration of the five-year period, declaring
the contract "and all things connected with and pertaining
thereto terminated, and at an end."

Appeal from Kent; Wolcott, J. Submitted October 20,
1904. (Docket No. 57.) Decided November 15, 1904.

Bill by Melvin B. Church against the Anti-Kalsomine
Company to compel the reassignment of a contract.
From an order overruling a demurrer to the bill, defend-
ant appeals. Reversed.

*Hyde, Earle & Thornton*, for complainant.

*T. J. O'Brien* (*Burlingame, Belden & Orton*, of
counsel), for defendant.

CARPENTER, J. In his bill of complaint complainant
sets forth at length the same written contract executed by
himself and defendant which is set forth at length in a
former case between the same parties decided by this
court. See 118 Mich., at pages 226–228. He avers that
the inventions therein described whereby wall coatings
might be applied by the use of cold water instead of hot
water were patented, and that the patents were by a writ-
ten instrument assigned to defendant "as required by said
contract." He claims therein that defendant's right to

these patents expired at the end of the five-year period mentioned in said contract, and prays for a reassignment of the same.

The defendant demurred to the bill of complaint. The trial court overruled this demurrer, and defendant appeals to this court. We shall consider but one of several reasons stated for the demurrer, viz., that the effect of the contract and the assignments set forth in the bill of complaint conveyed to defendant an absolute title to the patents, and not merely an exclusive right for the period of five years.

Complainant contends that defendant's demurrer and argument in support thereof assumes that the bill is framed on the theory that under a proper construction of the contract and assignments the title of defendant ended at the expiration of said five-year period, whereas the true construction of the bill is that the contract was ambiguous, and " at the time it was understood and agreed that the patents were to be owned by defendant only for the life of the contract;" that is, for a period of five years. As no effect can be given to an oral contract inconsistent with the terms of a contemporaneous written one, the construction of the bill contended for by complainant will not entitle him to relief unless we may say that either the contract or the assignment is consistent with the alleged contemporaneous agreement that the rights of the defendant should end in five years. Whether or not there is such consistency must be determined by construing the written contract and assignments. No time need be spent in construing the assignments, because they transfer to defendant the title to which its contract entitles it. The question is, then, What title to the patented inventions did the written contract entitle defendant ?

The contract was made January 27, 1892. It recites the claim of complainant:

" That one Haire, now living in England, has made a new improvement and discovery in wall coating by means of which the product    *    *    *    may be used and applied with a brush after mixing the same with cold water.

*   *   *   An improved article which may be applied with cold water would be superior, it is claimed, to anything now in use or heretofore known, and the ownership of such discovery and invention by the first party [defendant], it is also claimed, will result in increased gains and profits, *   *   *   and he [complainant] has proposed, in consideration of what follows herein, to make the first party [defendant] the owner, within certain territory, of the invention and improvements in question."

That complainant also "claims to have discovered and invented certain improvements by which the same result may be produced." That these discoveries and improvements "are severally patentable." It is therefore agreed, that complainant "will cause and procure to be transferred to the first party [defendant] the invention and discoveries of the said Haire, *   *   *   will also procure from the said Haire an agreement and undertaking *   *   * that all inventions and improvements which he shall make in the future in the direction of wall finish or wall coating of any kind shall belong exclusively to the first party [defendant] within the territory of the United States and Mexico, and that *   *   *   the said Haire *   *   *   will make and sign such papers as may be necessary to assure to the first party the ownership of such discoveries and inventions, and will also, on request, sign such applications for patents as the first party shall deem necessary." That complainant "will also make such applications as may be necessary for the issuance of a patent or patents within the United States covering any invention or improvements made by him in the direction in question, and will also make like applications in the future, when requested, for any further improvements. All patents which may be issued to the said Haire or to the second party [complainant] shall belong and be assigned to the first party [defendant] hereto."

It was also a part of this agreement, and apparently the consideration for complainant's promises, that the latter should continue in defendant's employ for five years at an annual salary of $5,000 a year, and, in addition there-

to, should receive one-half the net profits in excess of $40,000 per annum. The contract shows this amount was fixed at $40,000 because it was assumed that the defendant was making that amount from its business before this contract was made. It was also agreed that at the end of the period of five years the capital stock of the company, which was assumed to be worth $400,000, should be increased at the rate of $1 for each 10 cents of its average annual increased earnings during said five-year peroid, and that this increased capital stock should be divided equally between complainant and defendant.

Is this language consistent with an alleged contemporaneous agreement that defendant's interest in the patents should cease at the expiration of five years ?

For the express purpose of making defendant "*the owner within certain territory,*" viz., the United States and Mexico, complainant agreed to "procure to be transferred to the first party [defendant] the inventions and discoveries of the said Haire" and "also to procure from the said Haire an agreement * * * that all inventions and improvements which he shall make in the future * * * *shall belong exclusively to the first party* [defendant] *within the territory of the United States and Mexico;*" that patents shall be procured by said Haire for said inventions and discoveries; that complainant will also procure patents for inventions and improvements then made or made in the future by him in the same direction; and "that all patents which may be issued to said Haire or to the second party [complainant] shall belong and be assigned to the first party [defendant] hereto."

We are able to draw but one inference from this language, viz., that defendant should be the absolute owner of these patents during their life. And this inference is strengthened, rather than weakened, by the rights the contract secured to complainant as a consideration for said assignments. He secured employment for the period of five years, and this circumstance is the one thing in the contract which created a five-year period. That there is no relation between this five-year period and defendant's

rights in the patents is proved by the fact that when said period expires—that is, when said complainant's employment terminates—complainant obtained by the increased stock a permanent interest in defendant's business, to which he would have no right except upon the assumption of the latter's continued ownership of the patents.

We conclude, therefore, that under the proper construction of the contract defendant was to become the absolute owner of the patents, and that any prior or contemporaneous oral agreement that said ownership should cease at the end of five years is inconsistent with its terms.

In reaching this conclusion we have not overlooked complainant's contention that a resolution passed by defendant's board of directors at the expiration of said five-year period declaring that the contract "and all things connected with and pertaining thereto are now terminated and at an end" is inconsistent with the construction now placed on said contract. It is by no means clear that by this resolution defendant's directors intended to admit that their title to the patents was ended, and therefore it may be argued that it is not in fact inconsistent with our construction. If it is in fact inconsistent, then it may be said that the bill contains an averment that defendant has made an admission that the contract should be construed as contended by complainant. If defendant made such an admission, the most that can be said is that it had a mistaken notion of the proper construction of a written contract. Such mistaken notion would not lessen its rights nor be considered by the court in construing a contract which, like the one in question, is clear and unambiguous. See *Scully* v. *Detroit Iron Furnace Co.*, 132 Mich. 333.

We are constrained, therefore, to hold that the learned trial judge erred in overruling defendant's demurrer. The order appealed from will therefore be reversed, with costs of both courts, and the record remanded for further proceedings.

The other Justices concurred.